UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

**CASE NO: 1:25-cv-00582-UA-LPA**

**MINDY BOYCE,**
individually and on behalf of all
others similarly situated,

Plaintiff,

v.

**HAPPY HIPPO, LLC,**

Defendant.
_________________________________/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT[1]

Plaintiff Mindy Boyce brings this class action against Defendant Happy Hippo, LLC, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. (the "TCPA") and the North Carolina Telephone Solicitations Act ("NCTSA"), N.C. Gen. Stat. § 75-100 *et seq*.

2. Defendant is an online retailer that sells Kratom supplements, which the FDA has concluded "is an unsafe food additive….[and] is not lawfully marketed as a dietary supplement[.]" www.fda.gov/news-events/public-health-focus/fda-and-kratom.

---

[1] Amended as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).

3. To promote its kratom supplements, Defendant engages in unsolicited text messaging and continues to text message consumers after they have opted out of Defendant's solicitations.

4. Through this action, Plaintiff seeks to recover statutory damages under the TCPA and NCTSA for herself and the Class of individuals that suffered invasion of privacy, harassment, aggravation, and disruption at the hands of Defendant.

**JURISDICTION AND VENUE**

5. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the federal TCPA, and supplemental jurisdiction over the NCTSA claims.

6. Additionally, this Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), over the NCTSA claims because this is a putative class action involving at least several hundred North Carolina Class Members and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Moreover, Plaintiff, many absent Class Members, and Defendant are citizens of different states. Damages under the NCTSA are set by statute at $500 for the first violation, $1,000 for the second violation, and $5,000 for the third and subsequent violation, in addition to attorney's fees and costs. N.C. Gen. Stat. § 75-105. 20. As reflected by Plaintiff's typical situation, Plaintiff is entitled to over $16,500.00 in statutory damages for her NCTSA claim because she received four (4) violative texts. Given Defendant's use of an automated text messaging system to solicit North Carolina residents like Plaintiff, as well as it refusal to honor opt-out requests, Plaintiff is informed and believes that there are at least 303 North Carolina citizens who, like Plaintiff, have at least $11,500 in statutory damages. Thus, the CAFA jurisdictional amount in controversy is satisfied.

7. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because

Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District like Plaintiff.

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a citizen and resident of Lee County, North Carolina. Plaintiff's cellular telephone number ending in 5330 ("5330 Number") has an area code (910) that is associated geographically with North Carolina.

9. Defendant is a corporation whose principal office is located in Idaho. Defendant is a "telephone solicitor" under the NCTSA because it does business in North Carolina and makes telephone solicitations to North Carolina "telephone subscribers" like Plaintiff and the Class Members. *See* N.C. Gen. Stat. §§75-101(10), (11).

## FACTS

10. Defendant caused multiple text messages to be transmitted to Plaintiff's 5330 Number as depicted below:




+1 (302) 899-1576
Text Message • SMS
Fri, Mar 28 at 3:58 PM
You will no longer receive promotional text messages from Happy Hippo To re-enroll, reply to this message with START and sign up again through their store or website.
The sender is not in your contact list.
Report Junk


+1 (833) 259-2850
Text Message • SMS
Friday 3:41 PM
Happy Hippo
CELEBRATING 12 YEARS OF HAPPY HIPPO
ENJOY 35% OFF EVERYTHING
Our BIGGEST Sale Ever!
Shop At:
HappyHippo.com
Stop
NETWORK MSG: You replied with the word "stop" which blocks all texts sent from this number. Text back "unstop" or "start" to receive messages again.
The sender is not in your contact list.
Report Junk


+1 (585) 510-7448
Text Message • SMS
Today 5:21 PM
OFFICIAL MESSAGE FROM
Happy Hippo
CLICK LINK BELOW
You have a new notification from Happy Hippo. https://happyhippomsg.com/16rxuLAwh5J0Z9 reply STOP to opt out
The sender is not in your contact list.
Report Junk


+1 (585) 510-7448
Fri, Apr 11 at 3:26 PM
OFFICIAL MESSAGE FROM
Happy Hippo
CLICK LINK BELOW
You have a new notification from Happy Hippo. https://happyhippomsg.com/16ry6hiG2u9hDa reply STOP to opt out
Stop
Thank you for opting out of Happy Hippo program. You will no longer receive account notification updates from us. If you wish to subscribe again, simply text START or contact 1-855-478-4038 for assistance


+1 (585) 510-7448
Today 11:35 AM
OFFICIAL MESSAGE FROM
Happy Hippo
CLICK LINK BELOW
11:35 AM
You have a new notification from Happy Hippo. https://newhappyhippomsg.com/16rzctmcfqYZ37 reply STOP to opt out
11:35 AM
Stop
11:45 AM
Thank you for opting out of Happy Hippo program. You will no longer receive account notification updates from us. If you wish to subscribe again, simply text START or contact 1-855-478-4038 for assistance
11:45 AM


+1 (816) 277-0893
Text Message • SMS
Today 3:05 PM
Happy Hippo: Exclusive 20% for our VIP sms subscribers, expires in 48 hours! Use this code: VIPsms20
The sender is not in your contact list.

11. Plaintiff asked Defendant to stop texting her on March 25, 2025, but Defendant continued to send her text messages on March 28, 2025, April 4, 2025, April 11, 2025, April 21, 2025, and April 26, 2025.

12. Plaintiff reasonably revoked her consent to receive text messages from Defendant. Notwithstanding, Defendant continued to send text messages for the purpose of encouraging Plaintiff to purchase Defendant's products.

13. Plaintiff never opted back into text messages from Defendant after initial her "stop" request.

14. Given Defendant's use of an automated text messaging platform, as reflected by the auto-reply opt-out confirmations Plaintiff received, depicted above, Defendant had the ability to immediately opt Plaintiff out of further communications but chose not to do so. Accordingly, it was unreasonable for Defendant to continue texting Plaintiff given its ability to immediately opt Plaintiff out and its representation to Plaintiff that she had been opted out of further communications

15. As demonstrated by the above screenshots, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services.

16. As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding, but Defendant continued to text message Plaintiff.

17. Defendant sent at least two solicitations after Plaintiff's initial opt-out request.

18. Plaintiff is the regular user of the 5330 Number.

19. Plaintiff utilizes the 5330 Number for personal purposes and the number is Plaintiff's residential telephone line. Plaintiff has no land-line phone number and this number is her only way to contact her when she is home.

20. Plaintiff's 5330 Number has been listed on the National Do Not Call Registry since January 3, 2009.

21. Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

22. Defendant's failure to honor opt-out requests demonstrates that Defendant does not 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and/or (3) maintain a standalone do-not-call list.

23. Defendant's failure to (1) maintain the required written policies and procedures, (2) provide training to its personnel engaged in telemarketing, (3) maintain a standalone do-not-call list, and (4) honor consumer opt-out requests caused Plaintiff and the class members harm as they continued to receive text message solicitations after asking for those messages to stop.

24. Defendant did not maintain procedures for handling and processing text message opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made opt-out requests and the requests were never processed; they were ignored by Defendant and its employees and Defendant continued to send text messages for months.

25. Plaintiff and the Class Members revoked any consent they may have previously provided Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

26. Plaintiff and the Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

27. Defendant's failure to (1) maintain the required written policies and procedures, (2) provide training to its personnel engaged in telemarketing, (3) maintain a standalone do-not-call list, and (4) honor consumer opt-out requests, caused Plaintiff and the class members harm as they continued to receive text message solicitations after asking for those messages to stop.

28. The text messages sent by Defendant to Plaintiff and the Class Members were transmitted "via an automatic telephone dialing system" (the "Platform") as Defendant publicly admits on its website. *See* enrollnow.vip/join/35829. The Platform automatically sent text message blasts to Plaintiff's and the Class members' stored telephone numbers with no human involvement.

29. Defendant's use of generic text messages further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers.

30. The Platform utilized by Defendant to text message Plaintiff and the Class members has the capacity to store telephone numbers to be called using a random or sequential number generator and to dial such numbers.

31. The Platform has the capacity to select and dial numbers automatically from a list of numbers.

32. The Platform has the capacity to schedule the time and date for future transmission of text messages.

33. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiffs and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

34. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

35. It is not impossible for Defendant to comply with the NCTSA in the context of transmitting text messages.

36. The burden and cost to Defendant of complying with NCTSA is nominal.

37. Compliance with the NCTSA will not result in Defendant having to cease its business operations.

38. Compliance with the NCTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

39. Compliance with the NCTSA will not force Defendant to seek regulatory approval from the state of North Carolina before undertaking any type of commercial transaction.

40. Defendant sent the same or similar text messages to Plaintiff and each putative Class member in that the content of the messages consisted of advertising the availability of Defendant's apparel.

41. Defendant's text message spam caused Plaintiff and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

42. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

43. Plaintiff brings this case on behalf of the Classes defined as follows:

> **Internal Do Not Call Class: All persons within the United States who, within the four years prior to the filing of this action, (1) were sent more than one text message within any 12-month period, (2) regarding Defendant's goods, (3) to said person's residential cellular telephone number, (4) after making a request to Defendant to not receive future text messages by replying with a "stop" or similar opt-out instruction in response to Defendant's text message(s).**

**<u>DNC Class</u>: All persons in the United States who, within the four years prior to the filing of this action through the date of class certification, (1) were sent more than one text message within any 12-month period; (2) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (3) regarding Defendant's goods, products, and/or eye exam and related services; (4) to said person's residential cellular telephone number; (5) after making a request to Defendant to not receive further text messages by replying with a "stop" or similar opt-out instruction in response to Defendant's text message(s).**

**<u>ATDS Class</u>: All persons within the United States who, within the four years prior to the filing of this action, received one or more text messages, sent utilizing the Platform, regarding Defendant's goods, to said person's cellular telephone number, after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**

**<u>NCTSA Class</u>: All persons in North Carolina who, within the four years prior to the filing of this action, received one or more text messages, regarding Defendant's goods, to said person's cellular telephone number, after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**

44. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

45. Defendant and its employees or agents are excluded from the Classes.

**<u>NUMEROSITY</u>**

46. Upon information and belief, Defendant has sent text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States and at least 303 North Carolina Class Members. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

47. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

## COMMON QUESTIONS OF LAW AND FACT

48. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

a) Whether Defendant violated 47 C.F.R. § 64.1200(d);

b) Whether Defendant violated 47 U.S.C. § 227(b);

c) Whether Defendant violated N.C. Gen. Stat. § 75-102(b);

d) Whether Defendant violated the TCPA;

e) Whether Defendant violated the NCTSA;

f) Whether Defendant's conduct was knowing and willful;

g) Whether Defendant adhered to requests by Class members to stop sending text messages to their telephone numbers;

h) Whether Defendant keeps records of text recipients who revoked consent to receive texts;

i) Whether Defendant has any written policies for maintaining an internal do not call list;

j) Whether Defendant violated the privacy rights of Plaintiff and members of the class;

k) Whether Defendant complies with the National Do Not Call Registry;

l) Whether the purpose of Defendant's text messages was to solicit the sale of its apparel; and

m) Whether Defendant is liable for damages, and the amount of such damages.

49. The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

50. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

51. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

52. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

53. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.

Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

54. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

55. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a

telemarketing call is made or an affiliated entity.

56. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity that, like Defendant, sends telemarketing text messages to wireless telephone numbers.

57. Plaintiff and the Class Members are residential telephone subscribers who received more than one telemarketing text message from Defendant, who has failed to implement adequate procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests within a reasonable period of time that does not exceed 30 days, and its lack of a written policy for maintaining an internal do-not-call list.

58. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

59. Plaintiff and the Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

60. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

61. Defendant failed to honor Plaintiff's and the Class members' opt-out requests within a reasonable period time.

62. In violation of section 64.1200(d)(1), Defendant does not have written policy for maintaining a do-not-call list.

63. In violation of section 64.1200(d)(2), Defendant does not train its personnel engaged in telemarketing on the existence and use of a do-not-call-list with respect to inbound "stop" text messages like those sent by Plaintiff and the Class members. Defendant's lack of adequate training resulted in

Plaintiff and the Class members receiving text messages after they texted Defendant with "stop" or similar opt-out instructions.

64. In violation of section 64.1200(d)(3), Defendant failed to record Plaintiff's and the Class Members' opt-out requests on a do-not-call list, and failed to honor Plaintiff's and the Class Members' do-not-call requests within a reasonable time.

65. In violation of section 64.1200(d)(6), Defendant does not maintain a do-not-call list consisting of consumers' inbound "stop" text message requests to not receive text messages, and therefore does not honor those requests within a reasonable period of time.

66. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation

**COUNT II**
**Violations of 47 U.S.C. § 227(c) and 64.1200(c)**
**(On Behalf of Plaintiff and the DNC Class)**

67. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

68. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

69. Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

70. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to

protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

71. Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

72. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one text message in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

73. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class.

**COUNT III**
**<u>Violations of 47 U.S.C. § 227(b)</u>**
**(On Behalf of Plaintiff and the ATDS Class)**

74. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

75. The TCPA prohibits (1) any person from text messaging a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

76. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded

voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

77. As it admits on its website, Defendant utilized "an automatic telephone dialing system" to text message Plaintiff and the ATDS Class members. *See* enrollnow.vip/join/35829.

78. The "automatic telephone dialing system" system utilized by Defendant to text message Plaintiff and the Class members has the capacity to store telephone numbers to be called using a random or sequential number generator and to dial such numbers.

79. Plaintiff and the ATDS Class members made requests to Defendant to not receive texts from Defendant.

80. Plaintiff and the ATDS Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

81. Defendant sent automated text messages to Plaintiff and the ATDS Class Members without their express consent.

82. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to send non-emergency text messages to the cell phones of Plaintiff and ATDS Class members without their prior express consent.

83. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and ATDS Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

**COUNT IV**
**Violations of N.C. Gen. Stat. § 75-102(b)**
**(On Behalf of Plaintiff and the NCTSA Class)**

84. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

85. Plaintiff is a "telephone subscriber" entitled to bring a claim under the NCTSA. *See* N.C. Gen. Stat. §§75-101(11); 75-105(b).

86. Defendant is a "telephone solicitor" doing business in North Carolina and making or attempting to make telephone solicitations in this state. *See* N.C. Gen. Stat. §75-101(10).

87. Defendant's text messages sent to Plaintiff and the Class Members are "telephone solicitation[s]" because the purpose of those messages was to encourage Plaintiff and the Class Members to purchase Defendant's goods.

88. In violation of section 75-102(b), Defendant sent text message telephone solicitations to Plaintiff and the Class Members after they communicated to Defendant their desire to receive no further telephone solicitations from Defendant. *See* N.C. Gen. Stat. §75-102(b).

89. In violation of section 75-102(d), Defendant failed to implement systems and written procedures to prevent further telephone solicitations to any telephone subscriber who has asked not to be called again at a specific number. *See* N.C. Gen. Stat. §75-102(d).

90. In violation of section 75-102(d), Defendant failed train, monitor, and enforce compliance by its employees and monitor and enforce compliance by its independent contractors in those systems and procedures. *See* N.C. Gen. Stat. §75-102(d).

91. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to and seek $500 in damages for the first text message violation, $1,000 for the second text message

violation, and $5,000 for the third and subsequent text message violations, in addition to attorneys' fees and costs. *See* N.C. Gen. Stat. §75-105(b); (d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of each Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of each Class as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA and NCTSA;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and NCTSA;

d) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

Dated: September 30, 2025

Respectfully submitted,

*s/ David M. Wilkerson*

DAVID M. WILKERSON
NC State Bar No. 35742
Attorney for Plaintiff
Wilkerson Justus PLLC
PO Box 54
Asheville, NC 28802
Tel: 828-316-6902
dwilkerson@wilkersonjustus.com
Local Civil Rule 83.1(d) Counsel

HIRALDO P.A.
*By: /s/ Manuel S. Hiraldo*
Manuel S. Hiraldo
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
Special Appearance
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on this date, I electronically filed this document with the Clerk of the Court using the CM/ECF system which will automatically send email notification to all attorneys of record.

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.